Case 5:25-cv-00083-RWS Document 32   Filed 12/02/25   Page 1 of 48 PageID #: 6745

2/26/2025 5:53 PM
Lori Caraway
District Clerk
Bowie County, Texas
Monica Huereque, Deputy

## CAUSE NO. 22C1214-005

| | | |
|---|---|---|
| **FMG NORTH TEXAS, LLC,** | § | **IN THE 5TH DISTRICT COURT** |
| **PLAINTIFF** | § | |
| | § | |
| **V.** | § | **OF** |
| | § | |
| **JOE THOMAS, SIGNAD, LTD,** | § | |
| **AND SIGNAD GP, LLC** | § | |
| **DEFENDANTS** | § | **BOWIE COUNTY, TEXAS** |

## PLAINTIFF'S FOURTH AMENDED PETITION

COMES NOW, Plaintiff FMG North Texas, LLC, and for its Fourth Amended Petition would state as follows:

### I. Parties

1.1    Plaintiff, FMG North Texas, LLC, d/b/a Lindmark Outdoor, is a Foreign Limited Liability Company registered to do business in Texas.

1.2    Defendant Joe Thomas is an individual who resides in Texarkana, Bowie County, Texas. Defendant Thomas has made an appearance in this action.

1.3    Defendant SignAd, Ltd. is a Domestic Limited Partnership registered to do business in Texas. The General Partner of Defendant SignAd, Ltd. is SignAd GP, LLC, a Domestic Limited Liability Company. Defendant SignAd, Ltd has made an appearance in this action.

1.4    Defendant SignAd GP, LLC, is a Domestic Limited Liability Company registered to do business in Texas, and is the General Partner of Defendant Sign Ad

Ltd, and is registered to do business in Texas. Defendant SignAd, GP, LLC, has made an appearance in this action.  All SignAd Defendants are collectively referred to herein as "Defendant SignAd" or "SignAD".

## II. Jurisdiction and Venue

2.1    This Court has jurisdiction of the subject matter of this suit because the amount in controversy is within this Court's jurisdictional limits.

2.2    This Court has personal jurisdiction over Defendant Joe Thomas, because he is a resident of Bowie County, Texas. Additionally, Defendant has consented to this Court exercising subject matter jurisdiction over him in this action. *See* **Exhibit A** at Section 20.

2.3    This Court has personal jurisdiction over Defendant SignAd, Ltd. because it was formed in and conducts business in this State.

2.4    This Court has personal jurisdiction over Defendant SignAd GP, LLC, because it was formed in and conducts business in this State.

2.5    Venue is proper in this county because it is where all, or a substantial part, of the events or omissions giving rise to Plaintiff's claims occurred. Additionally, venue is proper because Defendant Joe Thomas has agreed venue is property in this county. *See* **Exhibit A** at Section 20.

## III. Rule 47 Statement and Discovery Level

3.1    Discovery should be conducted under Discovery Level 3.

3.2    Plaintiff seeks recovery of damages more than $1,000,000, and non-monetary relief.

### IV. Factual Background and Causes of Action

4.1    Plaintiff, FMG North Texas, LLC, d/b/a Lindmark Outdoor ("Lindmark"), is in the business of outdoor advertising. Generally, Lindmark secures leases on property for the purpose of erecting billboards, or other outdoor advertising structures, and enters into agreements with parties who wish to place advertisements on the same.

4.2    Lindmark maintains offices and facilities across north Texas, including its office located at 7770 Hampton Road, Texarkana, Texas 75503.

4.3    Lindmark and Defendant, Joe Thomas ("Defendant" or "Thomas"), entered into an employment relationship on or about August 21, 2019. Thomas was employed as Lindmark's Land Lease Manager for its Texarkana Market.

4.4    On or about August 21, 2019, Lindmark and Thomas executed a Letter of Understanding ("LOU") setting out the terms of Thomas's employment. The Letter of Understanding is attached to this Petition as **Exhibit A.**

4.5    Defendant's duties as an employee of Lindmark included, among other things, identifying potential locations for Lindmark to erect billboards, securing leases with the landowners for that purpose, securing permits from state or municipal agencies necessary to construct those billboards, and oversight of the construction of those

billboards. Further, as the Land Lease Manager, Defendant was given access to Lindmark's land lease portfolio non-public information about every lease Lindmark has with property owners. Such non-public information includes the term of each lease and the amount Lindmark was paying each landowner for the lease.

4.6    The LOU provided Thomas may "have access to, and become familiar with, various trade secrets and confidential information." **Exhibit A** at section 9. In turn, Defendant promised to, within the term of his employment and for five years after such employment is terminated, not divulge confidential information or trade secrets to third parties. *See* **Exhibit A** at Section 9(a),(b).

4.7    Lindmark fulfilled its promise to provide Thomas with confidential information and trade secrets during the course of his employment with Lindmark. Specifically, Lindmark provided Thomas with Lindmark's land lease portfolio, which contains confidential information about the term of each of Lindmark's leases and the amount Lindmark pays to each property owner for such lease.

4.8    Alternatively, Lindmark impliedly promised to provide confidential information and trade secrets to Thomas during the course of his employment because the nature of Thomas's employment required that such information be given to Thomas to fulfill his duties. Lindmark fulfilled this implied promise by actually providing Thomas with confidential information and trade secrets during his employment.

4.9    In the LOU, Thomas further entered into a covenant not to compete with

Lindmark after the termination of his employment relationship. Specifically, the

LOU stated

> **Section 8.    Covenant Not to Compete and Non-Solicitation.** The
> provisions set forth hereinbelow shall become effective between the
> parties upon Employee completing sixty(60) days of employment with
> Employer. Employee acknowledges that all the provisions contained in
> this Section 8, including the restrictions on time and geographical
> scope, are reasonable and necessary to protect Employer's legitimate
> business interests from unfair competition and solicitation.
>
> **(a)    Prohibition of Competing with Employer.** Employee hereby
> agrees and warrants that Employee will not, either during any time
> Employee is employed or for a period of two (2) years thereafter,
> either directly or indirectly, for Employee or any third party, become
> engaged in any business or activity which is directly or indirectly in
> competition with any product sold by, or any business or activity
> conducted by, Employer within one hundred (100) miles of any
> office or facility of Employer, which office or facility was in
> existence at the time of termination of Employee's employment with
> Employer.
>
> **(b)    Prohibition of Soliciting other Employees.** Employee will
> not, either during Employee's employment with Employer or for a
> period of two (2) years thereafter, either directly or indirectly, for
> Employee or any third party, solicit, induce, recruit, or cause another
> person in the employ of Employer to terminate his or her
> employment for the purpose of joining, associating or becoming
> employed with any business or activity which is in competition with
> any product sold, or any business or activity conducted, by
> Employer.

**Exhibit A** at Section 8(a),(b).

4.10   Defendant submitted his resignation with Lindmark on August 8, 2022, stating he would leave employment in two weeks' time. Lindmark terminated Defendant's employment on that day.

4.11   Upon information and belief, Defendant thereafter began an employment relationship with Defendants SignAd, Ltd. or SignAd GP, LLC, d/b/a SignAd Outdoor Advertising, or both of them, (sometimes collectively referred to as "SignAd Defendants" or "SignAd")   a business who is engaged directly or indirectly in the same business as Lindmark within an area that is within 100 miles of a facility or office of Lindmark. Specifically, Thomas resides in Texarkana, Texas and is engaging in the same or similar duties for SignAd that he did while employed by Lindmark.

## COUNT I – BREACH OF COVENANT NOT TO COMPETE (AGAINST DEFENDANT THOMAS)

4.12   Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

4.13   Lindmark and Thomas entered into an enforceable agreement on August 21, 2019. Specifically, Lindmark explicitly or implicitly promised to provide Thomas with Lindmark's confidential information and trade secrets during his employment with Lindmark. *See* **Exhibit A** at Section 9(a),(b). Lindmark did supply Thomas with Lindmark's confidential information and trade secrets in the course of his employment, including but not limited to information regarding potential sites upon

which Lindmark intended to erect billboards or other outdoor advertising structures. Thomas made a return promise to Lindmark to keep such confidential information and trade secrets confidential during the term of his employment and for five years beyond the termination of his employment. *See* **Exhibit A** at Section 9(a), (b).

4.14    The covenant not to compete is ancillary to or is a part of the enforceable agreement concerning Lindmark's trade secrets and confidential information. Specifically, Lindmark's explicit or implicit promise to provide Thomas with Lindmark's confidential information and trade secrets is an interest reasonably worthy of protection, and the covenant not to compete is directly intended to enforce Thomas's promise to keep such confidential information and trade secrets confidential.

4.15    The geographic and time limitations placed on Thomas by the covenant not to compete are reasonable. Thomas is obligated to not engage in an activity described by Section 8 of the LOU for a period of only two years from the termination of his employment with Lindmark. The geographical limitations are similarly reasonable; such restrictions are not unlimited and reasonably limit Thomas to competing with Lindmark within an area within 100 miles from one of Lindmark's facilities or offices which were in existence upon the termination of Thomas's employment with Lindmark.  Such offices are located as follows:  1) 2700 Technology Place, Norman, OK 73071 ("Norman Office"); 2) 2104 S. Sunset Avenue, Roswell, NM 88203

("Roswell Office"); 3) 3514 McNiel Avenue, Wichita Falls, TX 76308 ("Wichita Falls Office); 4) 2931 Texoma Drive, Denison, TX 75020; and 5) 7770 Hampton Road, Texarkana, TX 75503.

4.16   The tailored and reasonable limitations placed on Thomas by the covenant not to compete are no greater than necessary to protect Lindmark's business interests.

4.17   Thomas has breached the covenant not to compete by accepting employment with SignAd and engaging in activities which are in direct or indirect competition with Lindmark's business activities within an area that is within 100 miles of one or more of Lindmark's offices or facilities. Upon information and belief, Thomas resides in Bowie County, Texas, and is performing his employment duties with SignAd, which is within 100 miles of one of Lindmark's offices or facilities or has or intends to perform such duties within 100 miles of one of Lindmark's offices or facilities.

4.18   Thomas's breach of the covenant not to compete caused injury to Lindmark, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the acts described herein.

## COUNT II – BREACH OF FIDUCIARY DUTY (AGAINST DEFENDANT JOE THOMAS)

4.20   Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim. As stated in those paragraphs, Defendant was an employee of Lindmark from on or about August 21, 2019, until August 8, 2022.

4.21   Defendant, as an employee of Lindmark, owed Lindmark a fiduciary duty that required him to, among other things, act primarily for Lindmark's benefit during the term of his employment.

4.22   Defendant breached his fiduciary duty to Lindmark during the term of his employment. Specifically, on or about June 29, 2022, Defendant Joe Thomas secured a lease agreement with a landowner in Jefferson, Marion County, Texas, (hereinafter the "Jefferson lease"), to allow Lindmark to erect a billboard or other outdoor advertising structure pending the approval of the construction of the same by the Texas Department of Transportation. Defendant failed to fulfill his fiduciary duty to Lindmark by failing to timely secure all necessary permits from TXDOT for the site in Jefferson, Marion County, Texas. As a consequence of Defendant's inaction, Defendant's new employer, SignAd—a direct competitor with Lindmark— secured a permit to construct a billboard at a location nearby. As State law or regulation provides, Thomas's new employer's application for this permit prevented Lindmark from applying for a permit at its leased location, (the "Jefferson lease"), resulting in Lindmark losing a substantial amount of expected profits that it would be entitled to had Defendant not failed to secure that permit.

4.23   Alternatively, and additionally, Defendant Joe Thomas breached his fiduciary duty to Lindmark during the term of his employment by actively providing information concerning Lindmark's lease location in Jefferson, Texas to SignAd

which allowed it to secure a neighboring ground lease and a permit from TXDOT and prevented Lindmark from constructing a billboard at the leased location by operation of the laws and regulations described in section 4.22, above. Upon information and belief, SignAd submitted a construction permit application to TXDOT on August 3, 2022, just **one day** following Defendant's interview with SignAd during which he shared intimate details for an hour and forty-five minutes regarding his recent work with Lindmark, and merely **five days** before Defendant was terminated from his employment with Lindmark. Upon information and belief, Defendant informed SignAd of Lindmark's intention to erect a billboard at the Jefferson, Texas location while fully intending to end his employment relationship with Lindmark and begin employment with SignAd. Defendant Thomas' fiduciary duty to Lindmark continued beyond his last date of employment of August 8, 2022.

4.24 The Defendant's breach of his fiduciary duty owed to Lindmark caused Lindmark injury, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the acts described herein.

## COUNT III – MISAPPROPRIATION OF TRADE SECRETS (AGAINST DEFENDANT JOE THOMAS)

4.25 Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

4.26   Lindmark owned trade secrets which it provided Thomas in return for his promise to keep such information confidential. As discussed in paragraphs 4.1-4.11, above, Lindmark provided Thomas with access to its land lease portfolio, which contains, among other information, (1) the locations of all property where Lindmark has secured a lease, (2) the term of such leases, and (3) the amount and timing of rent payments Lindmark makes to property owners for such leases.

4.27   Lindmark made reasonable efforts to keep the information provided to Thomas during his employment confidential. Lindmark required Thomas, and other employees who had access to the land lease portfolio, to keep such information confidential during and for a term of their employment and for a certain term after leaving Lindmark.

4.28   The information Thomas gained by being privy to the land lease portfolio has actual or potential economic value to Lindmark's competitors, including SignAd, because such information is generally unknown to and not readily ascertainable by any third party. The terms of Lindmark's leases, the amounts it pays, and the frequency of payments to property owners for such leases are valuable to Lindmark's competitors. If a competitor has knowledge of the amount Lindmark pays for their leases, a fact which Lindmark does not publish to the general public, it would increase the probability of securing a lease at the conclusion of Lindmark's term by

knowing exactly how much to offer to the landowner in order to entice them from renewing his lease with Lindmark.

4.29   Upon information and belief, Thomas has misappropriated Lindmark's trade secrets during the term of his employment with SignAd or will do so while employed by SignAd or any other of Lindmark's competitors. Specifically, Thomas agreed to keep any confidential information and trade secrets confidential during the term of his employment with Lindmark and for a period of five years after his employment ends. *See* **Exhibit A** at Section 9. Lindmark has not consented to Thomas's disclosure or use of its confidential information and trade secrets. Thomas knew or had reason to know he acquired knowledge of Lindmark's confidential information and trade secrets based upon his promise to keep such information confidential and while he owed Lindmark a fiduciary duty to keep such information confidential.

4.30   Thomas's misappropriation of Lindmark's trade secrets caused Lindmark injury, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the acts described herein.

## <u>COUNT IV – BREACH OF CONFIDENTIALITY AGREEMENT</u><br><u>(AGAINST DEFENDANT JOE THOMAS)</u>

4.31   Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

4.32   Thomas entered into an enforceable agreement with Lindmark to keep Lindmark's trade secrets and other confidential information confidential during the

term of his employment and for a period of five years following termination of such employment. *See* **Exhibit A** at Section 8.

4.33  Lindmark expressly promised to provide Thomas with Lindmark's confidential information and trade secrets in return for Thomas's promise to keep such information confidential.

4.34  Alternatively, Lindmark impliedly promised to provide Thomas with Lindmark's trade secrets and confidential information as Thomas's employment duties required that he be provided with such information.

4.35  Lindmark performed its promise to Thomas by actually providing Thomas with confidential information and trade secrets by, among other means, giving Thomas access to Lindmark's land lease portfolio.

4.36  Thomas has breached his promise to not divulge Lindmark's trade secrets and confidential information. Upon information and belief, Thomas has used the information he gained during his employment with Lindmark for the direct benefit of his new employer—SignAd—a direct competitor of Lindmark.

4.37  Lindmark's breach of the confidentiality agreement has caused injury to Lindmark, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the acts described herein.

## COUNT V – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS (AGAINST DEFENDANTS JOE THOMAS, SIGNAD, LTD. AND SIGNAD GP, LLC)

4.38    Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

4.39    Upon information and belief, Defendants SignAd, Ltd. or SignAd GP, LLC, or both of them, (sometimes collectively referred to as "SignAd Defendants" or "SignAd") have employed Defendant Joe Thomas and are engaged in the same or similar business ventures as Lindmark.

4.40    Upon information and belief, the SignAd Defendants are aware of the existence of Lindmark's valid contract with Defendant Joe Thomas, attached as **Exhibit A**, as well as Lindmark's interest in Thomas abiding by the contract,.

4.41    Upon information and belief, the SignAd Defendants were aware of the existence of Lindmark's valid contract with the owners of the Jefferson property, i.e., the Jefferson lease, and Lindmark's interest in such contract.  Defendant Joe Thomas was indeed aware of the existence of the Jefferson lease, as he secured it for Lindmark while he was an employee of Lindmark.

### A. Tortious Interference by all Defendants with the Jefferson lease

4.42    Plaintiff incorporates by reference the allegations contained in paragraphs 4.22- and 4.23 above. (The "Jefferson lease").  The actions of Joe Thomas, alleged in the above cited paragraphs, constituted Joe Thomas' interference with an existing contract Plaintiff had with said landowners in Jefferson, Marion County, Texas, (the Jefferson lease), that prevented Plaintiff from making profits on the contract, through

future advertisements for customers who would have paid Plaintiff to be placed on such billboard.

4.43    The Sign Ad Defendants likewise tortiously interfered with the Jefferson contract, and this tortious action prevented Plaintiff from making profits on the contract, through future advertisements for customers who would have paid Plaintiff to be placed on such billboard.

4.44  The Jefferson lease was a valid and enforceable contract. All of the Defendants were aware of the Jefferson lease. All of the Defendants willfully and intentionally interfered with the contract.  All Defendants intended to interfere with the Jefferson lease, and did so by inducement, or the hindrance of the performance of the contract. This breach by all Defendants proximately caused actual injury and damage to Plaintiff, that being the lost profits and benefits that Lindmark was reasonably certain to have received, if the interference had not occurred.  Plaintiff is entitled to receive as its damages the pecuniary benefits from not receiving the end benefits of the Jefferson lease, that being the advertising revenue it would have received if Defendant Joe Thomas had taken the steps required of him when he was an employee of Lindmark.

4.45   Plaintiff is entitled to receive damages for the lost benefit of the Jefferson lease/contract.

4.46   Plaintiff is also entitled to recover punitive damages from the Defendants due to their interference with the contract.

**B. Tortious Interference by the SignAd Defendants with Joe Thomas' contract with Lindmark.**

4.47   Plaintiff contends that the actions by the SignAd Defendants to tortiously interfere with Lindmark's Jefferson lease, as set out in Part A. above, is likewise a tortious interference with the contract of employment and the covenant not to compete provision, section 8, and the Trade Secrets and Confidentiality Provisions, Section 9, under such employment contract. (Exhibit A)   But the SignAd Defendants' tortious interference with Lindmark's employment contract with Defendant Joe Thomas goes farther than the interference with the Jefferson lease.

4.48   Upon information and belief, the SignAd Defendants, with actual knowledge of the contract between Lindmark and Thomas, induced Thomas to breach that contract by violating the terms of the covenant not to compete, trade secret, and confidentiality provisions of the agreement, pre and post-employment with the SignAd Defendants. The evidence in this case establishes that the SignAd Defendants induced, enticed, and paid as their employee Joe Thomas to engage in activities on the SignAd Defendants' behalf, in violation of the his former employment contract with Lindmark, by obtaining leases for the SignAd Defendants in Arcadia, Louisiana; Minden, Louisiana;   Stonewall, Louisiana; Bossier City, Louisiana;   Texarkana, Texas, and other locations still to be found by

Lindmark/FMG. Such utilization of Defendant Joe Thomas by the SignAd Defendants to secure such leases violated the terms of Thomas's covenant not to compete and, necessarily, required disclosure of information deemed confidential under the terms of Thomas's confidentiality agreement, as they occurred within 100 miles of Lindmark's office in Texarkana, Texas within the two years his departure of his employment with Lindmark. Joe Thomas employment agreement with Lindmark was a valid and enforceable contract. The SignAd Defendants willfully and intentionally interfered with the contract. The SignAd Defendants intended to interfere with Thomas' and Lindmark's employment contract and did so by inducement, or the hindrance, of the performance of the contract.

4.49  The SignAd Defendants' interference with Lindmark's contract with Thomas injured Lindmark

4.50  Lindmark's breach of the confidentiality agreement has caused injury to Lindmark, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the acts described herein.

### <u>COUNT VI - TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONSHIPS (AGAINST DEFENDANTS JOE THOMAS, SIGNAD, LTD. AND SIGNAD GP, LLC)</u>

4.51  Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

4.52   Lindmark had a reasonable probability that it would enter into a business relationship with third persons, advertisers, of the billboard that Joe Thomas failed to secure in Jefferson, Marion County, Texas, as discussed in paragraphs 4.22 and 4.23 above, which are incorporated by reference.   It is at a minimum reasonably probable that such third-party advertisers would have contracted with Lindmark, if Joe Thomas had secured the billboard in Jefferson, Marion County, Texas, considering all the facts and circumstances related to the transaction.

4.53   Each of the Defendants in this case knew about the Jefferson lease, and the reasonably probability that Lindmark would contract with third parties who would pay to advertise on the billboard to be erected on the property governed by the Jefferson lease,  and that Lindmark would make profits on such third party contracts are a result of securing the Jefferson lease.   Each Defendants in this case individually and intentionally interfered with the prospective contractual relationships between Lindmark and the third party/advertisers for such billboard in Jefferson, Marion County, Texas.   They interfered by Thomas' failure to timely take all actions necessary to secure the billboard site, as alleged in paragraph 4.22 and 4.23. Upon information and belief, Defendant Joe Thomas informed SignAd of Lindmark's intention to erect a billboard at the Jefferson, Texas location while fully intending to end his employment relationship with Lindmark and begin employment with SignAd. Upon information and belief, the SignAd Defendants either advised or

encouraged Joe Thomas not to complete the permit process with TxDot before he left the employment of Lindmark, and/or move ahead of Lindmark after Joe Thomas left the employment of Lindmark, before Lindmark could realize that Joe Thomas did not complete the application process with the TxDot before he left the employment of Lindmark.

4.54  The Jefferson lease was a valid and enforceable contract. All of the Defendants were aware of the Jefferson contract. All of the Defendants willfully and intentionally interfered with the contract. All Defendants intended to interfere with the Jefferson lease, and did so by inducement, or the hindrance of the performance of the contract. This breach by all Defendants proximately caused actual injury and damage to Plaintiff, that being the lost profits and benefits that Lindmark was reasonably certain to have received, if the interference had not occurred. Plaintiff is entitled to received as its damages the pecuniary benefits from not receiving the end benefits of the Jefferson lease, that being the advertising revenue it would have received if Defendant Joe Thomas had taken the steps required of him when he was an employee of Lindmark.

4.55  Such intentional interference of all Defendants is based upon each of the Defendant's desire to bring about the interference, by allowing the SignAd Defendants to secure a billboard that prevented Lindmark's' billboard from being put in place, and be available to generate advertising profits. The SignAd Defendant

were aware that under TxDot regulations, if it received a billboard permit in the area of the lease at issue, Lindmark would not be able to secure permission from TxDot to build a billboard on the land of its lessor in Jefferson, Texas. The SignAd Defendants were aware of Joe Thomas' actions in securing the Jefferson lease, and his failure to obtain TxDot approval for a permit to erect a sign on the property subject of the Jefferson lease, and the SignAd Defendants took advantage of that opportunity to acquire a contract in the general area that blocked Lindmark's Jefferson lease from become profitable, by preventing the ability to erect a sign on the land, as alleged in paragraphs 4.22 and 4.23 above. .

4.56   All Defendants had actual knowledge that the interference with Lindamark's lease with the landowner referenced in paragraphs 4.22 and 4.23 was certain to occur, or substantially certain to occur, as a result of Defendants' conduct complained of herein.

4.57   Each Defendant's actions were independently tortious. Each Defendant was aware that Defendant Joe Thomas had a fiduciary duty to secure all permits for the lease he signed while still an employee of Lindmark, and his failure to do so was a tortious action towards Lindmark and would cause them economic harm, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the tortious acts described herein.

## COUNT VI - MISAPPROPRIATION OF TRADE SECRETS (AGAINST DEFENDANTS SIGNAD, LTD. AND SIGNAD GP, LLC)

4.58    Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

4.59    Lindmark owned trade secrets which it provided Thomas in return for his promise to keep such information confidential. As discussed in paragraphs 4.1-4.11, above, Lindmark provided Thomas with access to its land lease portfolio, which contains, among other information, (1) the locations of all property where Lindmark has secured a lease, (2) the term of such leases, and (3) the amount and timing of rent payments Lindmark makes to property owners for such leases.

4.60    Lindmark made reasonable efforts to keep the information provided to Thomas during his employment confidential. Lindmark required Thomas, and other employees who had access to the land lease portfolio, to keep such information confidential during and for a term of their employment and for a certain term after leaving Lindmark.

4.61    The information Thomas gained by being privy to the land lease portfolio has actual or potential economic value to Lindmark's competitors, including the SignAd Defendants, because such information is generally unknown to and not readily ascertainable by any third party. The terms of Lindmark's leases, the amounts it pays, and the frequency of payments to property owners for such leases are valuable to Lindmark's competitors. If a competitor has knowledge of the amount Lindmark

pays for their leases, a fact which Lindmark does not publish to the general public, it would increase the probability of securing a lease at the conclusion of Lindmark's term by knowing exactly how much to offer to the landowner in order to entice them from renewing his lease with Lindmark.

4.62   Upon information and belief, Defendants SignAd, Ltd. or SignAd GP, LLC, or both of them, have employed Defendant Joe Thomas and are engaged in the same or similar business ventures as Lindmark.

4.63    Upon information and belief, the SignAd Defendants have misappropriated Lindmark's trade secrets during the term of their employment of Thomas.

4.64   Upon information and belief, the SignAd Defendants have acquired or will inevitably acquire Lindmark's trade secrets (including Lindmark's land lease portfolio) through improper means from Thomas at a time when they were aware Thomas agreed to keep such trade secrets confidential.

4.65   The SignAd Defendants' misappropriation of Lindmark's trade secrets has or will inevitably cause Lindmark injury, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the acts described herein.

## COUNT VII – TEXAS UNIFORM TRADE SECRETS ACT – TEXAS CIVIL PRACTICES AND REMEDIES CODE CHAPTER 134A (AGAINST DEFENDANTS JOE THOMAS AND SIGNAD)

4.66   Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

4.67   Defendant Joe Thomas misappropriated Lindmark's trade secrets by improper means because he used Lindmark's trade secrets without its consent in breach of his contractual obligation to limit use of Lindmark's trade secrets when, at the time of that use, he knew or had reason to know that he had a duty to maintain the secrecy of or to limit the use of Lindmark's trade secrets.

4.68   Defendant SignAd misappropriated Lindmark's trade secrets because it acquired Lindmark's trade secrets when it knew or had reason to know that Joe Thomas acquired the trade secrets by improper means, and/or because it used Lindmark's trade secrets by inducing Joe Thomas to breach his contractual duty to Lindmark to limit use of those trade secrets.

4.69   Pursuant to Section 134A.004(a) of the Texas Civil Practices and Remedies Code, Lindmark is entitled to an award of damages for the damages it has or will inevitably cause Lindmark injury, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the acts described herein.

## <u>COUNT VIII – THEFT LIABILITY ACT - TEXAS CIVIL PRACTICES AND REMEDIES CODE CHAPTER 134 (AGAINST DEFENDANTS JOE THOMAS AND SIGNAD)</u>

4.70   Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

4.71.   Defendants Joe Thomas and SignAd committed theft against Lindmark as defined by Texas Penal Code §31.03 by misappropriating Lindmark's property – i.e., its confidential and trade secret information - without Lindmark's effective consent and with the intent to deprive Lindmark of the property.

4.72.   Thomas's and SignAd's theft of Lindmark's property has or will inevitably cause Lindmark injury, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the acts described herein.

## <u>COUNT IX – FEDERAL DEFEND TRADE SECRETS ACT – 18 U.S.C. §1836(b)</u>

4.73.   Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.  Defendant Joe Thomas and Defendant SignAd, with the intent to convert Lindmark's trade secrets and confidential information related to its products and services used in or intended for use in interstate commerce, to the economic benefit of anyone other than Lindmark, the owner thereof, and intending or knowing that the misappropriation would injure Lindmark,

1. stole, or without authorization, appropriated, took, carried away, or by fraud, artifice, or deception, obtained such information;

2. without authorization, copied, duplicated, photographed, downloaded, uploaded, photocopied, replicated, transmitted, delivered, sent, mailed, communicated, or conveyed such information;

3. received, bought, possessed such information, knowing the same to have been stolen or appropriated, or converted without authorization;

4. attempted to commit any act described in the foregoing; or

5. conspired with one or more persons to commit any act described in the foregoing and one or more of such person did any act to effect the object of the conspiracy.

4.74. Defendant Thomas's and Defendant SignAd's theft of Lindmark's property has or will inevitably cause Lindmark injury, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the acts described herein.

### COUNT X - ALL DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE TO PLAINTIFF AS THROUGH AIDING AND ABETTING/ASSISTANCE OR ENCOURAGEMENT

4.75. Plaintiff Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

4.76. Defendant Joe Thomas breached his duty to Plaintiff by way of his breach of his covenant not to complete with Defendant, (Count I), the breach of his fiduciary duty to Defendant, (Count II), his misappropriation of trade secrets of Plaintiff, (Count III and VII), his breach of his confidentiality agreement with Plaintiff, (Count

IV), by tortiously interfering with Plaintiffs existing and prospective contracts, (Counts V and VI), and his theft of Plaintiffs' trade secrets and property. (Counts VIII and IX).

4.77   The SignAd Defendants had knowledge that Defendant Joe Thomas' conduct set out above in each Count constituted a tort.  The SignAd Defendants had the intent to assist Defendant Joe Thomas in committing these torts and provided Defendant Joe Thomas assistance and/or encouragement to do so. The SignAd Defendants knowingly assisted, aided, abetted, and encouraged Defendant Joe Thoams to commit such wrongful actions, or refrain from actions that he owed a duty to perform for Lindmark, as set out in paragraph 4.68.

4.78.  The SignAd Defendants' assistance and/or encouragement was a substantial factor in causing these torts to occur.

4.79   Likewise, Defendant Joe Thomas was aware that the SignAd Defendants were breaching their duties to Plaintiff, under law, by SignAd's tortious interference with Plaintiff's existing contracts (Count V), and SignAd's tortious interference with Plaintiff's prospective contractual relationships, (County VI)

4.80   Defendant Joe Thomas' knowingly assisted, aided, abetted, and/or encouraged the SignAd Defendants in their commission of such torts upon Plaintiff.

4.81.  Defendant Joe Thomas' assistance, aiding, abetting, and encouragement of the SignAd Defendants was a substantial factor in causing these torts to occur.

4.82.  For this reason, all Defendants are jointly and severally liable to Plaintiff for all damages and relief that this Court finds Joe Thomas and the SignAd Defendants responsible.

## <u>COUNT XI - CONSPIRACY BETWEEN THE DEFENDANTS</u>

4.83.  Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim. Defendant Joe Thomas and the SignAd Defendants acted together, as two or more persons, in their actions and inactions towards Lindmark as set out in this Petition.

4.84  The object of this combination was to accomplish an unlawful purpose, that being the accomplishment of having Joe Thomas to breach his employment contact with Lindmark, and violate his covenant not to compete, to breach his fiduciary duties to Lindmark, to steal and misappropriate trade secrets of Lindmark, to interfere with the business of Lindmark and the contracts with current, and third party/prospective customers of Lindmark.  All Defendants acted with the specific intent to commit such tortious actions, injury and damage to Lindmark.

4.85.  Alternatively, if the Defendants allege that their business goals that lead to their actions with each other were for a lawful purpose, such as the development of their own business profits, it was done by unlawful means, that being the commission of the torts and breaches of the employment contract between Defendant Thomas and Linmark. (Counts I-VIII)

4.86.  Defendant Thomas and the SignAd Defendants had a meeting of the minds to commit such wrongful actions alleged above. They all had the knowledge of the objective and purposes of the conspiracy, that being to enhance the Defendants' financial income, revenue and profits, by illegally and tortiously, and in breach of contract, harming Lindmark and causing Lindmark to suffer injury and economic damages. This meeting of the minds existed at the conception of the approach by the SignAd Defendants to Defendant Joe Thomas, to come to work for the SignAd Defendants.

4.87.  Defendant Thomas and the SignAd Defendants had an agreement, a "meeting of the minds", and an understanding between each other, and a specific intent, to inflict the harm upon Lindmark address in this Petition. Each of the Defendants were aware of the beginning of their agreement to act in combination of the harm to Lindmark that would result, or the harmful conduct that would be taken against Lindmark.  This was either an express agreement or alternatively evidenced by the course of conduct of the Defendants from which a tactic agreement to act in concert may be inferred.

4.88.  Each of the Defendants, or at least one of the Defendants committed overt acts, at least one of which was unlawful, in furtherance of the conspiracy set out herein.

4.89   Upon information and belief, Defendant Joe Thomas was acting for a personal purpose of his own, in addition to merely acting as the agent for the SignAd Defendants. Joe Thomas' employment contract with the SignAd Defendants provided that he was to receive, in addition to his set salary, a commission per SignAd Defendants' Real Estate Incentive Program.  Defendant Joe Thomas had his own personal incentive through additional financial gain, to take the actions complained of by Lindmark herein.   Therefore, Defendant Joe Thomas' actions create the exception to the general law that agents and a corporation/corporate entity cannot form a conspiracy as a matter of law.  *Fojtik v. First Nat'l Bank*, 752 S.W.2d 669 (Tex.App.-Corpus Christi 1988), and *Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 138 (Tex. App. – Texarkana 2000) (overruled in part on other grounds)

4.90.  Lindmark suffered damages as a proximate result of the wrongful and underlying acts of the Defendants underlying the conspiracy.

4.91.  The conspiracy of the Defendants has or will inevitably cause Lindmark injury, and Lindmark seeks an award of damages, as stated below, for the injuries it has or will inevitably receive as a proximate result of the acts described herein.

## COUNT XII – VICARIOUS LIABILITY

4.92.  Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim. At all times while Defendant Joe Thomas was an employee of the SignAd Defendants, for the actions and inactions complained of herein, he was

the authorized representative of the SignAd Defendants. The SignAd Defendants intentionally conferred to Thomas the authority to take such actions, or fail to act when he was obligated to, that are complained of by Lindmark, and/or intentionally allowed Thomas to believe he had such authority, or alternatively, through lack of due care, allowed Thomas to believe he had the authority to take such wrongful actions, or fail to act when he was obligated to do so.

4.93. Defendant Thomas was given the general and/or specific authority from the SignAd Defendants to action, or fail to act, in the ways that are complained of by Lindmark in this lawsuit. All of Thomas' actions and inactions were within the scope of the express or implied authority from the SignAd Defendants.

4.94. The SignAd Defendants are vicariously liable to Lindmark for all such actions and inactions of Defendant Joe Thomas, asserted in this Petition.

## V. **Damages**

5.1. Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

5.2   Lindmark seeks an award of actual damages for the wrongful conduct of all defendants, including but not limited to:

(1) lost profits Lindmark would have earned in the absence of Defendants' acts described above,

(2) profits that Lindmark will lose in the future as a consequence of Defendants' acts described above,

(3) an amount equal to the value of all property the Defendants acquired as a consequence of their acts described above,

(4) a reasonable royalty for the property acquired by Defendants as a consequence of Defendants' acts described above,

(5) the imposition of a constructive trust on the SignAd property acquired directly or indirectly as a consequence of Defendants' acts described above.

(6) the diminution in value of Lindmark as a consequence of Defendants' acts described above.

(7) the diminution in value of Lindmark's confidential and trade secret information as a consequence of Defendants' acts described above.

(8) punitive damages in the highest amount permitted by law,

(9) an accounting of Defendants' profits from the property it acquired as a consequence of Defendants' acts described above,

(10) all other damages of whatever character, whether direct or consequential, in law or equity, that Lindmark is entitled to under Texas law.

5.3. **Constructive Trust.** Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

5.4. Defendant Joe Thomas occupied a fiduciary relationship with Lindmark during his employment with them. He breached that fiduciary duty by misappropriating Lindmark's trade secrets and by carrying away confidential information when he went to work for Defendant SignAd.

5.5. By using Lindmark's trade secrets and confidential information to acquire signs for SignAd, both Defendants Thomas and SignAd were unjustly enriched.

5.6.    Lindmark is entitled to the imposition of a constructive trust on the property acquired by SignAd as a consequence of Defendants' acts described above, together with all revenues received in the past, present, and future from those signs.

## VI. Request for Injunctive Relief

### A.  Equitable Tolling of the Covenant Not to Compete and Other

6.1    Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

6.2    Although the two (2) year covenant to compete in Defendant Joe Thomas' contract has expired, because all Defendants' continuously and persistently violated the covenant within the 2 years after Joe Thomas left the employment of Plaintiff, Plaintiff is entitled to the Court's ruling that the covenant not to compete is equitably tolled as justice will require. Plaintiff will also be entitled to the tolling of the other prohibitions placed upon Defendant Joe Thomas  contained in Sections 8 and 9 of his employment contract with Lindmark. (See Exhibit A).  Plaintiff will seek this Court's ruling, extending by way of a permanent injunction from the end of trial, the covenant not to compete and all other contractual requirements under Defendant Joe Thomas' employment contract with Plaintiff, beyond any stated time periods contained in the contract, due to the continued and persistent breach of such duties by Defendant Joe Thomas as proven at the trial.

## B. Request for Permanent Injunction

6.3     Lindmark further requests that the Court grant Lindmark a full trial on the merits, and, after the trial, issue a permanent injunction against Defendant Thomas, including the equitably tolling the covenant not to compete, and enjoining him from violating the covenant not to compete and all other prohibitions placed upon Defendant Joe Thomas in the employment contract, Sections 8 and 9. Additionally, Lindmark requests that the Court grant Lindmark a full trial on the merits, and, after the trial, issue a permanent injunction against the SignAd Defendants enjoining them from further tortiously interfering with Lindmark's contract with Thomas and from further misappropriating Lindmark's trade secrets and confidentiality duties Plaintiff will also plead the equitable doctrine of equitable tolling on the determination of the length of time for such equitable tolling in its injunction entered against the SignAd Defendants. Plaintiff seeks this Court's Equitable Order requiring Defendants to turn over all of Plaintiff's Trade Secret information in their possession.

## C.  Request for Interim Injunctive Relief

6.4     Plaintiff reserves the right to seek interim injunctive relief as is necessary.

### VII. Request for Appointment of a Receiver
### Over Defendant SignAd in Aid of Injunctive Relief and Constructive Trust

7.1.    Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

7.2.    Section 64.001((a) of the Texas Civil Practices and Remedies Code states that "[a] court of competent jurisdiction may appoint a receiver: . . . (6) in any . . . case in which a receiver may be appointed under the rules of equity." TEX. CIV. PRAC. & REM. CODE §64.001(a)(6).

7.3.    The actions by Defendants Thomas and SignAd above are wrongful, and the harm from those actions is imminent.  Specifically, Defendant Thomas stole and misappropriated Lindmark's "playbook" and their 900 Page Excel Spreadsheet document which lists all of the leases, permits, signs, pricing information, terms of payment, profit margin, maturity dates, contact information, for every single sign that Lindmark has, and he did so with Defendant's SignAd's aid, counsel, support, and blessing.  The "playbook" and 900-page Excel Spreadsheet give Defendants the ability to compete against Lindmark with full knowledge of every detail of Lindmark's sign business. Defendants have already used that information to wrongfully acquire leases, permits, and signs that they would not have acquired otherwise.

7.4.    The harm to Lindmark is irreparable, Defendants' actions create a threat of serious injury to Lindmark, and there is no adequate remedy for addressing it. Although the legal and equitable remedies requested above will compensate Lindmark for the damages that have occurred up to the date of judgment, after that, in the absence of a receiver, Defendants Thomas and SignAd will be able to act with

significant lead time before additional litigation can be commenced, and the full extent of their tortious actions discovered. Through the extensive litigation herein, Lindmark has uncovered Defendants' vast illegal activities, but Defendants could threaten Lindmark's existence before any future round of litigation could bring them to heel. *See Mabrey v. Sandstream, Inc.*, 124 S.W.3d 302, 317 (Tex. App. – Fort Worth 2003, no review) ("a legal remedy may also be inadequate if an award of damages would come too late").

7.5.   The equities clearly favor the granting of relief in this instance. There is no justification for Defendants' actions, and they did so with full knowledge of the Letter of Understanding, covenant not to compete, and nondisclosure agreement. Absent a sale of the entire company, Lindmark would never have allowed their confidential information and trade secrets to be licensed, sold, or otherwise used by a third party, and injunctive relief does not fully compensate for misappropriation of their confidential information and trade secrets. After engaging in such behavior, appointment of a receiver for SignAd is necessary in order to safeguard Lindmark's confidential information and trade secrets, to monitor Defendants' compliance with the injunction, and to facilitate the transfer of ownership of all leases, signs, permits, and revenues subject to the constructive trust imposed herein.

## VIII.  Conditions Precedent

8.1    Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

8.2    All conditions precedent to Lindmark's claims for relief have been performed or occurred.

## VIII.  Lindmark's Affirmative Defenses To Defendants' Counter-Claims and Defenses

9.1    Lindmark incorporates by reference all of the preceding paragraphs as if set forth here verbatim.

### A.    Acceptance of Benefits Estoppel – Defendant Joe Thomas

9.2.    Defendant Joe Thomas is barred from arguing that his Letter of Understanding with Lindmark is unenforceable under the doctrine of acceptance of benefits estoppel.

### B.    Lack of Standing to Challenge Enforceability of Lindmark Contract – Defendant SignAd

9.3    Defendant SignAd does not have standing to argue that the Letter of Understanding between Defendant Joe Thomas and Lindmark is unenforceable because Defendant SignAd is neither a party to nor a beneficiary of that Letter of Understanding.

### C.    Felony Theft, Texas Penal Code Section 31.03

9.4   Defendants cannot assert the cap of exemplary damages under Section 41.008 of the Texas Civil Practices and Remedies Code because the wrong done by them constitutes a third-degree felony theft or higher under Section 31.03 of the Texas Penal Code (Theft) inasmuch as the value of the property taken is $30,000.00 or more.   TEX. PEN. CODE §31.03(e)(5).   Lindmark therefore seeks an award of exemplary damages in an amount that exceeds the cap on such damages otherwise applicable under Section 41.008 of the Civil Practices and Remedies Code.   See TEX. CIV. PRAC. & REM. CODE s41.008 (c)(7).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, FMG North Texas, LLC, d/b/a Lindmark Outdoor asks that the Defendants be cited to appear and answer and, on final trial, that Plaintiff be awarded a judgment against Defendants for the following:

(a)   actual damages;

(b)   equitable remedies, including but not limited to:

i.   Disgorgement of the Defendants' income profits received from their contractual and tortious violations of their duties to Plaintiff

ii.   imposition of a constructive trust on the property acquired by SignAd through Joe Thomas' violation a 100-mile radius of Lindmark's Texarkana office where Joe Thomas formerly worked, as well as a constructive trust on the property acquired by SignAd, through Defendant Joe Thomas's and/or SignAd's use of Lindmark's trade secrets and confidential information together with all revenues received in the past, present, and future from those properties;

iii.   an accounting of the profits acquired by Defendants through their conduct described above;

iv.     a permanent injunction prohibiting either Defendant from using or disclosing Lindmark's confidential information and trade secrets;

v.     appointment of a receiver over Defendant SignAd to monitor Defendants' compliance with the permanent injunction and to facilitate the receipt and transfer of leases, permits, signs, and revenue from signs subject to the constructive trust;

vi.     a turnover Order requiring Defendants to return all Trade Secret and Confidential information of Plaintiff in their possession;

vii.     equitable tolling and extension of the provisions of the Plaintiff's covenant not to compete with its former employee, Defendant Joe Thomas, against all Defendants;

(c)   punitive damages

(d)   attorney's fees

(e) prejudgment and post judgment interest;

(f) court costs; and

(g) all other relief to which Plaintiff shows itself entitled.

Respectfully submitted,

By: _____
        Ralph K. Burgess

Ralph K. Burgess, Of Counsel,
TSB 03381500
ralph.burgess.oc@markburgesslaw.com
Mark C. Burgess, TSB 00783755
mark@markburgesslaw.com
John Mark Burgess, TSB 24105556
john@markburgesslaw.com
**BURGESS LAW FIRM, P.L.L.C.**
4201 Texas Boulevard
Texarkana, Texas 75503
Telephone: 903-838-4450
Facsimile:844-270-5674

# CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of November 2025, a true and correct copy of the above and foregoing document has been forwarded to the following counsel of record as indicated below:

Marshall Wood
Richard Kroll
Telephone:  903-832-1321
Facsimile:  903-823-1325
Email:      marshall@nortonandwood.com
Email:      richard@nortonandwood.com

☐ Via First Class Mail
☒ Via Electronic Mail
☐ Via Facsimile
☐ Via Hand-Delivery
☐ Via CM/RRR
☒ Via CM/ECF

Attorney for Defendant Joe Thomas

William R. Stukenberg
Lauren B. Harris
Mary Anna H. Rutledge
Emil M. Sadykhov
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 755002
Telephone:  713-226-6611
Facsimile:  713-226-6021
Email:      wstukenberg@porterhedges.com
Email:      lharris@porterhedges.com
Email       mruthledge@porterhedges.com
Email       ESadykhov@porterhedges.com

Via First Class Mail
Via Electronic Mail
Via Facsimile
Via Hand-Delivery
Via CM/RRR
Via CM/ECF

Attorney for Defendant SignAd, LTD
& SignAd GP, LLC

By: _____

# Exhibit "A"



### LETTER OF UNDERSTANDIG

**THIS LETTER OF UNDERSTANDING ("Letter")** is entered into and effective as the date set forth above the parties signatures hereunder, by and between **FMG NORTH TEXAS, LLC**, a Delaware limited liability company, doing business as Lindmark Outdoor Media ( **"Employer"**) and the undersigned and identified employee ( **"Employee"**).

### W I T N E S S E T H :

**WHEREAS**, Employer desires to employ Employee for the position identified hereinbelow, and Employee desires to be employed by Employer in such position;

**WHEREAS**, the parties explicitly understand that notwithstanding anything to the contrary herein, Employee's employment with Employer shall always be "at-will";

**NOW, THEREFORE**, in consideration of the mutual agreements and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed by the parties as follows:

**Section 1.** **Employment.** Employer agrees to employ Employee, and Employee accepts to accept such employment from Employer in accordance with the terms and conditions of this Letter.

**Section 2.** **Term.** Employment under this Letter shall begin as of the date hereof, and it shall continue in effect until terminated as provided herein.

**Section 3.** **Compensation.** Depending on the classification of the position as exempt or non-exempt, Employer shall pay Employee in accordance with law and as Employer shall determine in its sole and absolute discretion. Employer is entitled to deduct from Employee's compensation any applicable deductions and remittances as required by law.

**Section 4.** **Duties.** Employee shall be responsible for performing the duties as instructed by Employer. Employee shall devote Employee's entire time and attention to Employee's duties. Employee should avoid activities or personal business which might result in a conflict between Employee's personal interests and Employee's duties.

**Section 5.** **No Right to Contract.** Notwithstanding anything contained in this Agreement to the contrary, Employee shall not have the right to make any contracts or commitments for or on the behalf of Employer without first obtaining the express written consent of Employer.

**Section 6.** **Employee Benefits.** Employer may provide, from time to time, certain benefits to Employee. However, Employer may change any such benefits at any

time, including cancellation of any or all such benefits, without compensation to Employee. Employee shall have no rights, nor any expectations with regard, to any such benefits.

**Section 7.    Expenses.**    Employee may incur reasonable expenses for promoting Employer's business, including expenses for entertainment, travel, and similar items. Employer will reimburse Employee for reasonable expenses related to entertainment, travel, and similar items upon Employee's periodic presentation of an itemized account of such expenditures. Notwithstanding the foregoing, no expenses shall be incurred by Employee on behalf of Employer unless Employee obtains Employer's prior written consent, which consent may be withheld at the sole and absolute discretion of Employer. Employer may refuse to reimburse Employee for any expenses incurred by Employee without having obtained Employer's prior written consent.

**Section 8.    Covenant Not to Compete and Non-Solicitation.**    The provisions set forth hereinbelow shall become effective between the parties upon Employee completing sixty (60) days of employment with Employer. Employee acknowledges that all the provisions contained in this Section 8, including the restrictions on time and geographical scope, are reasonable and necessary to protect Employer's legitimate business interests from unfair competition and solicitation.

**(a)    Prohibition of Competing with Employer.**    Employee hereby agrees and warrants that Employee will not, either during any time Employee is employed or for a period of two (2) years thereafter, either directly or indirectly, for Employee or any third party, become engaged in any business or activity which is directly or indirectly in competition with any product sold by, or any business or activity conducted by, Employer within one hundred (100) miles of any office or facility of Employer, which office or facility was in existence at the time of termination of Employee's employment with Employer.

**(b)    Prohibition of Soliciting other Employees.**    Employee will not, either during Employee's employment with Employer or for a period of two (2) years thereafter, either directly or indirectly, for Employee or any third party, solicit, induce, recruit, or cause another person in the employ of Employer to terminate his or her employment for the purpose of joining, associating or becoming employed with any business or activity which is in competition with any product sold, or any business or activity conducted, by Employer.

**Section 9.    Trade Secrets and Confidential Information.**    During the term of this Letter, Employee may have access to, and become familiar with, various trade secrets and confidential information, including, but not limited to Employer's client lists, belonging to Employer. Employee acknowledges that such confidential information and trade secrets are owned and shall continue to be owned solely by Employer. During the

term of Employee's employment and for five (5) years after such employment terminates for any reason, regardless of whether termination is initiated by Employer or Employee, Employee agrees not to use, communicate, reveal or otherwise make available such information for any purpose whatsoever, or to divulge such information to any person, partnership, corporation or entity other than Employer or persons expressly designated by Employer, unless Employee is compelled to disclose it by judicial process; however, Employee will first have given prompt written notice to Employer of any possible or prospective order (or proceeding pursuant to which any order may result), and Employer will have been afforded a reasonable opportunity to prevent or limit any disclosure.  The trade secrets and confidential information, which are prohibited from disclosure under this paragraph include, without limitation, any of the following:

        **(a)**      Marketing, sales, service, cost, business method, formula, product specification, planning, engineering, and technical information relating to Employer, as well as customer lists and any other information which could give any third party an opportunity to obtain an advantage over competitors who did not know such information; and

        **(b)**      Trade secrets, which are used in Employer's business and give Employer an opportunity to obtain an advantage over competitors who do not know them.

        **Section 10.**    **Termination.**  Employee's employment with Employer may be terminated by either party for any reason, or for no reason, so long as such termination is not discriminatory under any federal or state law.  The parties understand that Employee's employment with Employer is "at will".

        **(a)**      Employee hereby agrees and warrants that after the termination of employment with Employer, Employee will not solicit or have any contact with any current customer of Employer, or solicit potential customers if such potential customers are or were identified through leads developed during the course of Employee's business dealings with Employer, or otherwise divert or attempt to divert any existing business of Employer, within an area of one hundred (100) miles of any office or facility of Employer, which office or facility was in existence at the time of termination of Employee's employment with Employer.

        **(b)**      At any time upon Employer's request and, in any event, upon termination of Employee's employment with Employer, Employee will immediately deliver to Employer all data, manuals, specifications, lists, notes, writings, customer and product lists, photographs, recordings, and all other documents or tangible materials whatsoever, including all copies or duplicates, concerning any part of Employer's activities or concerning any part of Employee's activities as an employee of Employer. Employee hereby acknowledges that all such documents and tangible materials, and

copies or duplicates thereof, including Employee's own notes, are Employer's property, which is only entrusted to Employee on a temporary basis.

        **Section 11.**   **Notices.**  Any notice required or desired to be given under this Letter shall be deemed given if in writing and sent by certified mail, return receipt requested, to Employee's address, listed hereinbelow, or to Employer's principal office address, which is 2700 Technology Place, Norman, Oklahoma 73071, as the case may be.

        **Section 12.**   **Waiver of Breach.**  Employer's waiver of a breach of any provision of this Letter by Employee shall not operate or be construed as a waiver of any subsequent breach by Employee.  No waiver shall be valid unless in writing and signed by an authorized officer of Employer.

        **Section 13.**   **Assignment.**  Employee acknowledges that Employee's duties are unique and personal.  Accordingly, Employee may not assign Employee's rights or delegate Employee's duties or obligations under this Letter.  Employer's rights and obligations under this Letter shall inure to the benefit of, and shall be binding upon, Employer's successors and assigns.

        **Section 14.**   **Injunctive Relief.**  Employee hereby acknowledges that remedies at law may be inadequate to redress a default under this Letter; therefore, in addition to any other rights or remedies available to Employer, Employer shall be entitled to injunctive relief to enforce any of the provisions and to restrain and enjoin any act prohibited or required by this Letter against Employee, without the requirement of posting bond.

        **Section 15.**   **Severability.**  Employer and Employee acknowledge that this Letter is reasonable, valid and enforceable, and that all time periods and geographical limitations herein are reasonable and specifically agreed upon.  However, if a court of competent jurisdiction finds any of the provisions of this Letter to be too broad to be enforceable, it is the parties' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable, bearing in mind that it is Employee's intention to give Employer the broadest possible protection against disclosure of the Confidential Information, against Employee soliciting Employer's employees and customers and against Employee using such Confidential Information in competing with Employer.  In the event that any of the provisions of this Letter will be held to be invalid or unenforceable in whole or in part, those provisions to the extent enforceable and all other provisions will nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Letter and the remaining provisions had been executed by both parties subsequent to the expungement of the invalid provision.

        **Section 16.**   **Entire Letter.**  This Letter contains the entire understanding of the parties. No alteration of or modification to any of the provisions of this Letter shall be

valid unless made in writing and signed by both parties.  This Letter will supersede and void any other agreement made between Employer and Employee concerning Employee's employment with Employer.

Section 17.    **Headings.**  Headings in this Letter are for convenience only and shall not be used to interpret or construe its provisions.

Section 18.    **Counterparts and Copies.**  This Letter may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  A copy, including any form thereof, i.e., digital, of this Letter shall have the same import, effect, and status as an original.

Section 19.    **Governing Law.**  It is the intention of the parties to this Letter that this Letter and the performance under this Letter, and all suits and special proceedings under this Letter, be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of the state in which the Employee is employed, without regard to the jurisdiction in which any action or special proceeding may be instituted.

Section 20.    **Jurisdiction and Venue.**  The parties agree that jurisdiction and venue for any suit brought under this Letter shall only lie in a court of competent jurisdiction in the county in which the Employee is employed.

Section 21.    **Attorney Fees and Costs.**  If either party to this Letter breaches any of the terms hereof, that party shall pay to the non-breaching party all of the non-breaching party's costs and expenses, including, but not limited to, attorneys' fees and expert witness costs, incurred by that party in enforcing the terms of this Letter.

*[Signatures on following page]*

*[Remainder of page intentionally left blank]*

**IN WITNESS WHEREOF**, the parties have executed this Letter as of the _21st_ day of _August_, 20_19_.

EMPLOYER
FMG NORTH TEXAS, LLC,
d/b/a LINDMARK OUTDOOR MEDIA

By: _____

Trent Lindmark, Manager

EMPLOYEE

_____ (Signature)
_Joe Thomas_ (Printed Name)
_3612 Moores Lane_ (Address)
_Texarkana, TX 75503_

_318·267·2688_ (Telephone Number)
_Joe@lindmarkoutdoormedia.com_ (Email Address)

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Christy Harrison on behalf of Mark Burgess
Bar No. 783755
christy@markburgesslaw.com
Envelope ID: 108517120
Filing Code Description: Amended Petition
Filing Description: FOURTH AMENDED
Status as of 12/1/2025 8:20 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lauren BeckHarris | | lharris@porterhedges.com | 11/26/2025 5:53:20 PM | SENT |
| R. Blake Runions | | brunions@porterhedges.com | 11/26/2025 5:53:20 PM | SENT |
| Mark CBurgess | | mark@markburgesslaw.com | 11/26/2025 5:53:20 PM | SENT |
| Brenda Gorman | | bgorman@porterhedges.com | 11/26/2025 5:53:20 PM | SENT |
| Cheri Deason | | cdeason@porterhedges.com | 11/26/2025 5:53:20 PM | SENT |
| William Stukenberg | 24051397 | wstukenberg@porterhedges.com | 11/26/2025 5:53:20 PM | SENT |
| JOHN MARKBURGESS | | johnmark@markburgesslaw.com | 11/26/2025 5:53:20 PM | SENT |
| Mary Anna Hill | | mrutledge@porterhedges.com | 11/26/2025 5:53:20 PM | SENT |
| Burgess  Law FirmAssistant | | assistants@markburgesslaw.com | 11/26/2025 5:53:20 PM | SENT |
| Marshall wood | | marshall@nortonandwood.com | 11/26/2025 5:53:20 PM | SENT |
| Richard J.Kroll | | richard@nortonandwood.com | 11/26/2025 5:53:20 PM | SENT |
| Renee Irby | | renee@nortonandwood.com | 11/26/2025 5:53:20 PM | SENT |
| Emil Sadykhov | | ESadykhov@porterhedges.com | 11/26/2025 5:53:20 PM | SENT |
| Ralph Burgess | | ralph.burgess.oc@markburgesslaw.com | 11/26/2025 5:53:20 PM | SENT |